# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| WESTBURG MEDIA CAPITAL, L.P., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 2:10-00094-KD-N |
| WEST ALABAMA RADIO, INC., JOSEPH M. ROSS, JR., and AMY ROSS WARD, | ) |
| Defendants. | ) |

## ORDER

This action is before the Court on plaintiff Westburg Media Capital, L.P.'s (Westburg's) motion for summary judgment, brief in support, and evidentiary submissions (docs. 15, 16). Upon consideration and for the reasons set forth herein, the motion for summary judgment is **GRANTED**.

I. Background

On February 26, 2010, Westburg filed its complaint alleging that defendant West Alabama Radio, Inc. had breached the terms of the promissory note by failing to repay Westburg and alleging that defendants Joseph M. Ross, Jr. and Amy Ross Ward had breached the terms of the guaranty agreements wherein they guaranteed the promissory note of West Alabama Radio, Inc. Westburg attached to its complaint copies of all loan documents and guaranties. Defendants answered and admitted only their citizenship. Defendants denied all other allegations and raised several affirmative defenses to the complaint. Westburg has now filed the pending motion for summary judgment. Defendants did not file a response to the motion.

1

II. <u>Findings of fact</u>

Defendants did not dispute any factual allegation in Westburg's statement of undisputed material facts. Local Rule 7.2(b) for the Southern District of Alabama requires a party responding to a Rule 56 motion to specify the disputed facts, if any, and failure to do so will be interpreted as an admission that there is no material factual dispute. The Rule states as follows:

> Within thirty (30) days [of the filing of a motion for summary judgment] or as may be otherwise ordered, the party or parties in opposition shall file a brief in opposition thereto, **and, if it is contended that there are material factual disputes, shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the action. Failure to do so will be considered an admission that no material factual dispute exists;** provided, that nothing in this rule shall be construed to require the non-movant to respond in actions where the movant has not borne its burden of establishing that there is no dispute as to any material fact.

S.D.Ala.L.R. 7.2(b) (1997) (emphasis added); <u>see</u> <u>Patton v. City of Hapeville, Ga.</u>, 162 Fed. Appx. 895, 896 (11th Cir. 2006)[1] ("We conclude from the record, however, that the district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when Patton failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia."). Therefore, defendants failure to point out any disputed facts, "will be considered an admission that no material factual dispute exists". L.R. 7.2(b). Accordingly, the Court adopts Westburg's statement of undisputed material facts, with certain amendment to references to paragraphs in the Westburg Declaration, as follows:

1.      On or about February 2, 2005, West Alabama Radio borrowed the principal

---

[1] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. U.S. Ct. of App. 11th Cir. Rule 36-2.

amount of $687,000 from Westburg Media Capital, Inc. ("WMC, Inc.") pursuant to a promissory note (the "Promissory Note"), as modified by a Forbearance Agreement dated February 2007 and First Amendment dated March 6, 2009. (Doc. 15-1, Exhibit A, Declaration of David Westburg at ¶ 3; Exs. 1-3 to Westburg Decl). WMC, Inc. subsequently assigned all of its right, title and interest in the Note to Westburg Media Capital LP (Westburg). (Id.). Under the terms of the Promissory Note, West Alabama Radio was required to repay all principal indebtedness and accrued interest on or before January 11, 2010. (Id.).

2. In the event the loan was not repaid, the Promissory Note required West Alabama Radio to pay on demand:

> "All costs and expenses of [Westburg] incurred in connection with an Event of Default, including all reasonable attorneys' fees, costs and expenses incurred by [Westburg] in enforcing any of the provisions of this Note or any other Loan Document, or in collecting payment due under this Note or any other Loan Document through litigation or other dispute resolution."

(Id. at Ex. 1).

3. Also on or about February 2, 2005, Ross executed a document entitled "Guaranty" (the "Ross Guaranty"), in which Ross agreed to personally and unconditionally guarantee all of West Alabama Radio's obligations to Westburg. (Doc. 15-1, Ex. A, Westburg Decl. at ¶ 4; Ex. 4).

4. Also on or about February 2, 2005, Ward executed a document entitled "Guaranty" (the "Ward Guaranty", together with the Ross Guaranty, the "Guaranty Agreements"), in which Ward agreed to personally and unconditionally guarantee all of West Alabama Radio's obligations to Westburg. (Doc. 15-1, Ex. A Westburg Decl. at ¶ 5; Ex. 5).

5. The Guaranty Agreements contained broad waivers by Ross and Ward of certain

rights and defenses. (Doc. 15-1, Ex. A Westburg Decl., Exs. 4, 5). Inter alia, Ross and Ward agreed to waive "any defense which may be available to [West Alabama Radio] or any other person liable in respect of the indebtedness of [West Alabama Radio] to [Westburg]." (Id.).

6. Ross and Ward also agreed in the Guaranty Agreements to pay all of Westburg's attorneys' fees and expenses incurred in enforcing their obligations thereunder. (Id.).

7. West Alabama Radio failed to make the required payments due under the Promissory Note and thereby defaulted. (Doc. 15-1, Ex. A Westburg Decl. at ¶ 6).

8. On January 18, 2010, counsel for Westburg sent West Alabama Radio notice of its default and demand for repayment. (Id. at ¶ 7).

9. On February 2, 2010, counsel for Westburg sent Ward and Ross, as guarantors of West Alabama Radio's obligations to Westburg, notice of West Alabama Radio's default and demand for repayment. (Id. at ¶ 8).

10. As of the date of filing the motion for summary judgment, June 23, 2010, no further repayment due under the Promissory Note has been made by West Alabama Radio, Ross, or Ward. (Id. at ¶ 9).

11. As of June 15, 2010, the outstanding indebtedness due under the terms of the Promissory Note was $825,456.00 ($687,000.00 in principal and $138,456.00 in accrued interest) (Id. at ¶ 10). In addition, West Alabama Radio, Ross, and Ward are obligated to pay Westburg all costs incurred in enforcing its rights in collecting the outstanding indebtedness including but not limited to attorneys' fees and court costs. (Id.).

12. As of May 31, 2010, Westburg had incurred $8,244.93 in attorneys' fees and expenses related to collection of the West Alabama Radio Promissory Note and expects to incur approximately $6,000 in additional attorneys' fees related to this litigation. (Doc. 15-2, Ex. B

Declaration of W. Patton Hahn at ¶ 6).2

    III. <u>Conclusions of Law</u>

    A. <u>Summary Judgment Standard</u>

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). In this case, Westburg, the moving party, has the burden of proof at trial. The Eleventh Circuit has stated:

> When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party.
>
> <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) ( en banc ) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 331, 106 S.Ct. 2548 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. <u>Id</u>. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the

---

[2] The promissory note and guaranty agreements provide that in the event of a default, West Alabama, Ross and Ward shall pay all costs and expenses incurred by Westburg including all reasonable attorneys' fees, costs and expenses of litigation or other dispute resolution procedures to enforce the provisions of the note or loan or to collect payments due.

5

burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

  B. Failure to respond

  Defendants failed to respond to the motion for summary judgment and thus presented no evidence from which the Court could find that there is a material dispute of fact. However, the "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party." Dixie Stevedores, Inc. v Marinic Maritime, Ltd., 778 F. 2d 670, 673 (11th Cir. 1985). In United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida, 363 F.3d 1099 (11th Cir. 2004), the Eleventh Circuit held that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion", and noted the provision in Fed.R.Civ.P. 56(e) that when "'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.'" Id. at 1101 (emphasis in original); see also Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F. 3d 1035, 1040 (11th

Cir. 2004) (vacating and remanding the district court's grant of summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment[.]")

When this circumstance arises,

> [t]he district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. The district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.. In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must indicate that the merits of the motion were addressed.

One Piece of Real Property, 363 F.3d at 1101 -1102 (citations, internal quotations and footnote omitted).

C. Choice of Law Provision

The Promissory Note and Guaranty Agreements contain a choice of law provision whereby the laws of the State of Washington shall apply to this loan transaction. (Doc. 15-1, pgs. 11, 33-34, 40-41). Because this action is before the Court on basis of diversity jurisdiction, the substantive law of the State of Alabama applies to this Court's analysis of the choice of law provision. See Klaxon Co. v Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Alabama courts recognize "the right of contracting parties to choose the law of another state that governs the contract so long as the consequences of such provisions are not likely to be contrary to Alabama law or public policy." Goodwin v. George Fischer Foundry Systems, Inc., 769 F.2d 708, 712 (11th Cir. 1985); Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 507 (Ala. 1991)

("While parties normally are allowed to choose another state's laws to govern an agreement, where application of that other state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern the agreement.") (finding application of North Carolina law would violate public policy of Alabama). "Federal courts applying Alabama law have routinely held likewise: 'The right of the parties to a contract to choose the law governing their obligations is recognized by Alabama as long as the consequences of the election are not contrary to Alabama public policy.'" Allied Sales and Service Co. v. Global Indus. Technologies, Inc., 2000 WL 726216, 4 (S.D. Ala. May 1, 2000).

In regard to whether applying Washington law would result in a violation of the public policy of Alabama, Westburg makes the conclusory statement that the applicable provisions of Washington law are not contrary to Alabama law or public policy. Westburg does not provide the Court with any comparison between the law of Washington and the law of Alabama to support its conclusion. However, review of several cases wherein the law of the State of Washington was applied to a commercial debt collection action indicates that application of Washington law would not violate the public policy[3] of the State of Alabama. Cf. North Star Electric, Inc. v. Kingen, 130 Wash. App. 1054, 2005 WL 3529128, *3 (Wash. Ct. App.

---

[3] In Colston v. Gulf States Paper Corp., 291 Ala. 423, 282 So.2d 251(Ala. 1973), the Supreme Court set forth the "true test to determine whether a contract is unenforceable because of public policy" and explained that the test is "'whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.'" 291 Ala. at 427, 282 So.2d at 255 (citation omitted). There does not appear to be any public interest affected by the action before this Court. This cause of action arises in the commercial transaction context and does not invoke any of the consumer protection laws of the State of Alabama. Thus the public policy which provides for consumer protection is not at issue. See Derico v. Duncan, 410 So.2d 27, 31 (Ala. 1982) ( where lender was unlicensed, a consumer loan made pursuant to the Alabama Mini-code for protection of consumers was void).

8

December 27, 2005) ("A guarantee is a separate independent contract, even when it is contained within the principle contract. A contract clear in its terms will be enforced []. Summary judgment to enforce an unambiguous guarantee is proper.") (unreported opinion) and Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC, 155 Wash. App. 643, 661, 230 P. 3d 625, 633 (Wash. App. Div. 1 2010) ("The Guarantors correctly argue that a guarantee is a separate legal undertaking from the principal obligor's undertaking on a note.") (citation omitted) with Layne v. Garner, 612 So.2d 404, 407 (Ala. 1992) ("On several occasions this Court has stated that it is generally recognized that the rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract. Thus, when the terms of a guaranty agreement are unambiguous, the construction of the contract and its legal effect become questions of law for the court. Further, whether a guaranty agreement is ambiguous is a question of law for the court." ) (internal brackets, quotations and citations omitted); Barnett Bank of Pensacola v. Marable, 385 So.2d 66, 67 (Ala.Civ.App. 1980) ("Like other contracts, a guaranty is complete when the minds of the parties meet in mutual assent to the same things in the same sense."); Sherman Industries, Inc. v. Alexander, 980 So.2d 991, 995 (Ala.Civ.App. 2007) ("We conclude that we are bound by the controlling authority of the Supreme Court set forth in Barnett [Bank of Pensacola v. Marable, 385 So.2d 66, 67 (Ala.Civ.App. 1980).]"); cf also Freestone Capital Partners L.P., 155 Wash.App.at 664, 230 P.3d at 635 ("In Washington, . . . , a creditor may pursue a guarantor directly without first proceeding against the security for the debt.") with Pilalas v. Baldwin County Sav. & Loan Ass'n, 549 So. 2d 92 (Ala. 1989) ("The guaranty agreement set forth above clearly constitutes an absolute guaranty, which is an unconditional undertaking by the guarantor to pay a debt at maturity if the borrower does not. Under such an agreement, a creditor may

pursue his remedy against the guarantor even without first going against the borrower."); cf. also Quick Recovery Services v. Zehm, 145 Wash. App. 1012, 2008 WL 2408090, *3 (Wash. Ct. App. 2008) (finding that where "[t]he delinquency on the note is undisputed. . . . Summary judgment was proper.") (unreported opinion) with Diamond v. Bank of Alabama, - - - So. 3d - - - , 2009 WL 4015644, 9 -10 (Ala. November 20, 2009) ("If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment.") (construing terms of a promissory note, guaranty, and letter of credit) (citations omitted);

D. Liability under the Promissory Note and Guaranty Agreements

Defendants answered the complaint, disputed the amount due, and raised eleven affirmative defenses. However, defendants did not respond to the motion for summary judgment and thus failed to dispute Westburg's factual allegations and failed to present any evidence to support their position or their affirmative defenses. Importantly, defendants did not dispute the amount due under the promissory note and guarantees or Westburg's request for attorneys' fees, costs and expenses. See Lyes v. City of Riviera Beach, Fla., 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment").

In One Piece of Real Property, the Eleventh Circuit explained that when the non-movant fails to respond to a motion for summary judgment, this Court need not review all evidence in the file, but at the least, "must review all of the evidentiary materials submitted in support of the motion for summary judgment" and determine whether there is an absence of a genuine issue of material fact. 363 F.3d at 1101-1102. In that regard, the Court has reviewed the complaint and the copies of the promissory note, forbearance agreement, amendment of March 6, 2009, security agreement, pledge agreement, guaranty agreements, notice of default and demand for payment, and demand for payment (doc. 1, Exs. 1-9), the answer (doc. 7), Westburg's motion for summary judgment and brief including Westburg's statement of undisputed facts (docs. 15, 16), the declarations of David Westburg and W. Patton Hahn filed in support of the motion for summary judgment (docs. 15-1, 15-2), and the procedural history.

The promissory note contains a clear and unequivocal promise to pay to which West Alabama is bound. The terms of the guarantee agreements contain a clear and unequivocal obligation on the part of Ross and Ward to pay West Alabama's debt to Westburg and includes a clear and unequivocal waiver of any right which would require Westburg to first proceed against West Alabama before seeking to recover the debt from Ross and Ward. (doc. 1, p. 53, ¶ 5). Since defendants did not dispute Westburg's statement of undisputed facts, those facts are deemed admitted, and therefore, there is no factual dispute as to the default on the debt, demand, or the amount due. Further, the Court adopts, as the opinion of the Court, the argument set out in pages six through seven of Westburg's brief in support of the motion for summary judgment. Therefore, upon consideration, the Court finds that there is no genuine issue of material fact which precludes this Court's entry of judgment in favor of Westburg. Accordingly, Westburg's motion for summary judgment is **GRANTED**.

E. Application for attorneys' fees, costs and expenses

Westburg also argues that it should recover from defendants the total amount of $14,244.93 composed of attorneys' fees and expenses already incurred in the amount of $8,244.93 plus an estimated $6,000.00 which Westburg expects to incur in collecting the debt. The promissory note and the guaranty agreements both provide for payment of costs and expenses including a reasonable attorneys' fee (doc. 1, p. 12, 55). Also, the Revised Code of Washington 4.84.330, and the provision for recovery of costs and expenses in the promissory note and guaranty agreements apply in this action. The Code sets forth as follows:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

RCW 4.83.330.

Upon consideration of the unambiguous and binding terms of the promissory note and the guaranty agreements and the provisions of RCW 4.83.330, the court finds that Westburg, as the prevailing party, is entitled to recover costs, expenses, and reasonable attorneys fees. Tradewell Group, Inc. v. Mavis, 71 Wn.App. 120, 126, 857 P.2d 1053 (1993) (finding that the court must make a legal determination as to whether the statute or a contractual provision allows an award of attorneys' fees); McConnell v. Riedel, 150 Wash. App. 1057, 2009 WL 1863893, 3 (Wash. App. Div. 2 June 30, 2009) (unreported opinion) ("A party may recover attorney fees where authorized by private agreement, statute, or recognized ground of equity.") (citation omitted); cf. Peppertree Apartments, Ltd. v. Peppertree Apartments, 631 So.2d 873, 878 (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and

12

unambiguous.") Accordingly, Westburg's motion for summary judgment as to attorneys' fees, costs and expenses is **GRANTED**.

F. Amount of attorneys' fees, costs and expenses

At this point, under Washington law, the Court's discretion "is limited to deciding the amount of fees." Hawkins v. Bray, 2005 WL 852433 (Wash. App. Div. 3 April 14, 2005) (citation omitted) (unreported opinion). Under Washington law, the trial court has been granted broad discretion to decide whether the fee sought is reasonable and an award of a reasonable fee will be affirmed unless the court abused that discretion. Ethridge v. Hwang, 105 Wn.App. 447, 460, 20 P.3d 958 (2001). Also, the "Washington courts have adopted the lodestar approach when calculating reasonable attorney fees." Alpine Quality Const. Services, Inc. v. Johnson, 2008 WL 2505443, 7 (Wash.App. Div. 2, June 24, 2008) (unreported opinion). The Washington courts have further explained that

> [t]o calculate a lodestar amount, a court multiplies the number of hours the attorney reasonably expended by the attorney's reasonable hourly rate. The attorney's reasonably expended hours must be spent on claims having a common core of facts and related legal theories. The court should discount the attorney's hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time.

Id. (internal citations and quotations omitted). The courts require that the fee applicant "must provide only reasonable documentation of the work performed" and the documentation need not be exhaustive or in minute detail." Id. (citation and internal quotations omitted).

In regard to the hours reasonably expended, the court in Bowers v. Transamerica Title Ins. Co., explained that

> [t]he total number of hours reasonably expended is multiplied by the reasonable hourly rate of compensation. Where the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate. The attorney's usual fee is not, however, conclusively a reasonable fee and other factors may

13

necessitate an adjustment. In addition to the usual billing rate, the court may consider the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case. The reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation

100 Wash.2d 581, 597, 675 P.2d 193, 203 - 204 (Wash. 1983) (citations omitted).

The Bowers court further explained that

[a]fter the lodestar has been calculated, the court may consider the necessity of adjusting it to reflect factors not considered up to this point. The burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation. Adjustments to the lodestar are considered under two broad categories: the contingent nature of success, and the quality of work performed.

100 Wash.2d at 598, 675 P.2d at 204 (internal quotations and citations omitted).

However, "[t]he second basis on which the lodestar might be adjusted is to reflect the quality of work performed. This is an extremely limited basis for adjustment, because in virtually every case the quality of work will be reflected in the reasonable hourly rate." Id. "A quality adjustment is appropriate only when the representation is unusually good or bad, *taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.' " Id. (Citation omitted, italics in original).

Counsel for Westburg provided the Court with his affidavit that he had billed Westburg, through June 11, 2010, a total of $8,244.93 for time and expenses. He also stated that the bills "are reasonable and based on the prevailing rates in the community on the kind and quality of services furnished" and that he had reviewed the "billing records and exercised billing judgment to exclude any hours which were duplicative, inefficient, or otherwise unnecessary." Counsel also estimated that an additional $3,000.00 in fees and expenses would be incurred to reply to the response to the motion for summary judgment and to collect the debt, including post-judgment

14

interrogatories. Counsel provided copies of the bill to Westburg which show the total amount billed but not the hourly rate, time expended, or type of work performed.

**Accordingly, counsel for Westburg, shall file with the Court on or before September 23, 2010, such additional briefing and documentation as counsel deems sufficient to meet the requirements of the law of Washington.** In that regard, the Court does not consider the state of Washington to be the relevant market for determining a reasonable hourly rate. Although the law of the state of Washington governs the Court's consideration of the fee application, suit was filed in the Southern District of Alabama in Mobile, Alabama. Additionally, the issue of whether the Court may, under the law of the State of Washington, award an estimated fee for legal services not yet performed or award costs and expenses not yet incurred should be addressed.

IV. Conclusion

Upon consideration of the evidence, and for the reasons set forth herein, the Court finds that there is no genuine issue of material fact and Westburg is entitled to judgment as a matter of law. Accordingly, Westburg's motion for summary judgment is **GRANTED**.

The Court retains jurisdiction to consider the issue of reasonable attorneys' fees, costs and expenses as discussed herein.

By separate document, judgment shall be entered against defendants in the amount of $687,000.00 plus $138,456.00 (interest as of June 15, 2010) for a total of $825,456.00.

**DONE** and **ORDERED** this 13th day of September, 2010.

                                  s / Kristi K DuBose
                                  **KRISTI K. DUBOSE**
                                  **UNITED STATES DISTRICT JUDGE**